UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

FAIR HOUSING JUSTICE CENTER, INC.,

*Plaintiff*,

v.

NY BUILDING ASSOCIATES INC., NARESH MAHANGU, DEVELOPING NY STATE, LLC, and THIRD STREET EQUITY, LLC,

*Defendants*.

---

Index No.

**COMPLAINT**

Plaintiff Fair Housing Justice Center, Inc. ("FHJC") by its attorneys, Emery Celli Brinckerhoff Abady Ward & Maazel LLP, for its Complaint against Defendants NY Building Associates Inc. ("NYBA"), Naresh Mahangu, Developing NY State, LLC ("DNYS"), and Third Street Equity, LLC ("Third Street") (collectively the "Defendants"), alleges as follows:

## INTRODUCTION

1. Astor on 3rd is a newly constructed 60-unit multi-family rental building in Astoria, Queens.



1

2. The building was developed by Yitzchok Katz of DNYS and is owned by Third Street, whose Managing Member is also Yitzchok Katz. Naresh Mahangu, a professional engineer employed by NYBA, was the architect of record for the project.

3. According to Astor on 3rd's marketing materials, the building was "[b]uilt with state of the art design" and "maximize[s] luxury and functionality for every single resident."

4. In reality, testing by the FHJC has revealed that Astor on 3rd is inaccessible to people with disabilities.

5. Although it has been well settled for decades that developers and design and construction professionals are required to design and construct new residential multi-family buildings like Astor on 3rd with certain accessibility features, Defendants disregarded their legal obligations and denied equal housing opportunity to people with physical disabilities in New York City.

6. Strikingly, DNYS, Third Street, and NYBA ignored their legal obligations in designing and constructing Astor on 3rd even though the architect of record, Mr. Mahangu, had been recently audited and disciplined by the New York City Department of Buildings ("DOB") for "multiple code non-compliances," including by "fail[ing] to comply with accessibility requirements for people with disabilities."

7. The FHJC's investigation also revealed that NYBA and Mr. Mahangu recently completed or are currently designing or constructing at least seven other multi-family residential developments in New York City, including at least three with DNYS.

8. Based on investigations conducted by the FHJC over the past fifteen years in New York City, over 25 lawsuits have been filed in federal court against some of the largest multi-family residential developers and design and construction professionals alleging a failure

to design and construct accessible housing as required by fair housing laws. Broad remedies to retrofit residential units and common areas and to ensure that future new residential construction is accessible to people with physical disabilities have been implemented in those cases that have been resolved. As a result, the FHJC has found an increased level of compliance generally among residential developers and design and construction professionals in New York City. In this context, Defendants' continuing noncompliance is indicative of their ongoing practice of denying housing to persons with physical disabilities, including those who use wheelchairs, and their intentional refusal to comply with fair housing laws.

9. The FHJC seeks to halt and reform Defendants' discriminatory practices so that multi-family housing developed and designed by Defendants, currently and in the future, will be designed and constructed in full compliance with the law.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, 28 U.S.C. § 2201, and 42 U.S.C. § 3613. This Court has supplemental jurisdiction over the New York State and New York City causes of action pursuant to 28 U.S.C. § 1367.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because all of the Defendants are incorporated in this District and conduct business in this District.

## THE PARTIES

*Plaintiff*

12. The FHJC is a non-profit organization dedicated to ensuring that all people have equal access to housing opportunities in the New York City metropolitan region by eliminating housing discrimination and creating open, accessible, and inclusive communities. The FHJC's office is located in this District in Queens, New York.

13. Among other things, the FHJC: (a) provides information to the public and other non-profit organizations in the New York City area about fair housing laws; (b) provides intake counseling to individuals and organizations who have made allegations of housing discrimination; (c) conducts testing and other investigations of allegations of housing discrimination; (d) makes legal referrals to cooperating attorneys; and (e) provides post-referral litigation support services. The FHJC provides these services free of charge and without regard to income.

14. The FHJC also conducts testing investigations for government law enforcement agencies, provides technical assistance to non-profit organizations engaging in fair housing enforcement activities, and engages in policy initiatives that further the FHJC's mission, including the publication and dissemination of reports and educational materials.

15. The FHJC operates the Adele Friedman Housing Accessibility Fund (the "Fund") for the purpose of providing financial assistance to persons with physical disabilities within the FHJC's service area who need reasonable modifications made to their existing housing to make it accessible. The FHJC established the Fund, in part, due to residential developers and design and construction professionals continuing to design and construct inaccessible multi-family housing in New York City in violation of fair housing laws.

16. The FHJC employs individuals as "testers," who are persons that pose as renters or homebuyers for the purpose of obtaining information about the conduct of local governments, landlords, real estate companies, housing developers, agents, and others to determine whether illegal housing discrimination is taking place.

17. The FHJC expended staff time and other resources to investigate and to respond to Defendants' discriminatory practices, which diverted staff time and resources away from other FHJC activities.

18. By designing and constructing inaccessible housing, Defendants' practices have frustrated and continue to frustrate the FHJC's mission to ensure that all people have equal access to housing opportunities in the greater New York City region.

***Defendants***

19. Defendant NY Building Associates Inc. is a corporation incorporated in Queens County, New York. Defendant NYBA's principal office is located at 124-15 Metropolitan Avenue, Queens, New York. Upon information and belief, Defendant NYBA is the architectural and engineering firm that designed and constructed the multi-family residential dwelling units and common areas at Astor on 3rd.

20. Defendant Naresh Mahangu is a professional engineer licensed in the State of New York. At all times relevant to this action, he was employed by Defendant NYBA. Defendant Mahangu was the architect of record for Astor on 3rd.

21. Defendant Developing NY State, LLC is a limited liability company incorporated in Kings County, New York. Defendant DNYS's principal office is located at 505 Flushing Ave., Brooklyn, New York. Defendant DNYS was the developer of Astor on 3rd, a multi-family residential rental building with 60 apartments in Queens, New York. As the developer, Defendant DNYS was responsible for the overall design and construction of the dwelling units and common areas at Astor on 3rd. On information and belief, Yitzchok Katz is the Managing Member of DNYS.

22. Defendant Third Street Equity, LLC ("Third Street") is a limited liability company incorporated in Kings County, New York. Defendant Third Street's principal office is located at 505 Flushing Ave., Brooklyn, New York. Defendant Third Street is the owner of Astor on 3rd. As the owner, Defendant Third Street was responsible for the overall design and construction of the dwelling units and common areas at Astor on 3rd. Yitzchok Katz is the Managing Member of Third Street.

## STATUTORY AND REGULATORY FRAMEWORK

23. In 1988, Congress enacted the Fair Housing Act Amendments ("FHAA") design and construction accessibility requirements as part of comprehensive amendments to the Fair Housing Act to prohibit discrimination on the basis of disability.[1] The legislative history of the FHAA reflects Congressional findings that steps and thresholds at building or unit entrances send the same signal to persons using a wheelchair as a posted sign saying "No Disabled People Allowed."

24. Poorly designed and constructed buildings often exclude people with physical disabilities, including those who use wheelchairs. In considering the 1988 amendments, Congress stressed that enforcement of civil rights laws is necessary to protect people with disabilities from the "devastating" impact of housing discrimination, including "architectural barriers" erected by architects, developers and builders who fail to design and construct dwellings and common use areas at those dwellings accessible to and adaptable by people with physical disabilities. H.R. Rep. No. 100-711, at 25 (1988), *reprinted in* 1988 U.S.C.A.A.N. 2173, 2186; 134 Cong. Rec. S10454, 10463 (Aug. 1, 1998).

---

[1] The FHAA uses the term "handicap" rather than "disability." Both terms have the same legal meaning. *See Bradgon v. Abbott*, 524 U.S. 624, 631 (1998). This complaint uses the terms "disability" and "handicap" interchangeably. The term "disability" is more generally accepted.

25. The FHAA mandates that multi-family residential buildings containing four or more units and built for first occupancy after March 13, 1991 ("covered multi-family dwellings"), are subject to certain design and construction requirements. Covered multi-family dwellings must provide:

   a. Public-use and common-use areas that are readily accessible to, and usable by, people with mobility impairments;

   b. Doors designed to allow passage into and within all premises within such dwellings that are sufficiently wide to allow passage by people in wheelchairs;

   c. An accessible route into and through the dwellings;

   d. Light switches, electrical outlets, thermostats and other environmental controls in accessible locations;

   e. Reinforcements in bathroom walls that allow for the later installation of grab bars; and

   f. Usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

26. Pursuant to Congressional authority, the United States Department of Housing and Urban Development ("HUD") promulgated the final FHAA design and construction regulations in January 1989. 24 C.F.R. § 100.205. HUD published the final Fair Housing Accessibility Guidelines on March 6, 1991, 56 Fed. Reg. 9472 ("FHAAG"), which incorporates the requirements of the American National Standards Institute for buildings and facilities providing accessibility and usability for people with physical disabilities, A117-1-1986 ("ANSI"), the Fair Housing Act Design Manual in August 1996, which was revised in August

1998, and the Accessibility Requirements for Covered Multifamily Dwellings under the Fair Housing Act in April 2013.

27. The Americans with Disabilities Act requires that public use facilities, such as rental and leasing offices at apartment complexes, parking lots, sidewalks, and restrooms, built for first use after January 26, 1993, be designed and constructed so as to enable the full and equal enjoyment of services, facilities, privileges, and accommodations of a place of public accommodation by people with physical disabilities. 28 C.F.R. § 36.406, Appendix A (Standard 4.6).

28. The New York State Human Rights Law similarly prohibits the failure to design and construct covered multi-family dwellings in an accessible manner. N.Y. Exec. Law § 296(5), (18).

29. The New York City Human Rights Law prohibits discrimination in the rental of, or to otherwise deny or withhold, a housing accommodation to a renter because of disability. NYC Admin. Code, § 8-107(5); *see id.* § 27-292.8 (containing the accessibility requirements under the New York City Building Code).

## FACTUAL BACKGROUND

*The DOB's 2019 Audit of and Enforcement Action Against Naresh Mahangu*

30. The DOB audits professionally certified design and construction professionals in an effort to sanction and deter bad actors in the New York City construction industry.

31. On June 28, 2019, the DOB announced that it had audited "professionally certified applications submitted by Professional Engineer Naresh Mahangu" of NYBA.

32. During its audit of Mahangu, the DOB "found multiple code non-compliances," including, among other things, "failure to comply with accessibility requirements

8

for people with disabilities, inadequate egress issues, and various other violations of the NYC Zoning Resolution and NYS Multiple Dwelling Law."

33. As a result of the DOB's audit and enforcement action, "Mr. Mahangu agreed to voluntary surrender of his Professional Certification" and certain DOB privileges, "effective May 6, 2019."

34. Defendant Mahangu is currently actively licensed by the DOB.

*Design and Development of Astor on 3rd*

35. In September 2019, Third Street purchased the property in Astoria, Queens that would eventually be developed into Astor on 3rd.

36. Yitzchok Katz executed the mortgage financing documents for the purchase of the property as Third Street's Managing Member.

37. On October 15, 2020, an application was filed with the DOB for a permit to construct Astor on 3rd, a new building at 26-41 3rd Street in Astoria, Queens.

38. The October 15, 2020 new construction application listed Naresh Mahangu of NYBA as the applicant and architect of record and Yitzchok Katz of DNYS as the owner.

39. Astor on 3rd began leasing its residential units in August 2022.

*Lack of Accessibility at Astor on 3rd*

40. Astor on 3rd is a 60-unit rental building with elevator access located at 26-41 3rd Street, Astoria, Queens.

41. Astor on 3rd opened for occupancy in 2022.

42. Astor on 3rd includes one and two-bedroom apartments. Some of the apartments have private balconies.

43. All of the apartments at Astor on 3rd are covered dwelling units as defined by the Fair Housing Act.

44. Astor on 3rd has an onsite parking garage on the second floor of the building.

45. Indoor common area amenities at Astor on 3rd include, among other things, a bike room, gym, package room, laundry facility, media room, kids' playroom, pet spa, and a community recreational facility.

46. Outdoor common area amenities at Astor on 3rd include, among other things, a deck, patio, and roof deck.

47. On August 17, 2022, the FHJC sent two testers to Astor on 3rd posing as two brothers to inquire about a one or two-bedroom apartment on behalf of their nephew—a person with a physical disability who uses a wheelchair.

48. The two FHJC testers met with a man named Aaron who said he was a leasing agent for Brookliv, a real estate agency.

49. The leasing agent told the testers that one and two-bedroom apartments were available for rent and showed them three two-bedroom apartments.

50. The testers observed the following during their visit to Astor on 3rd:

    a. There were no designated accessible parking spaces in the building's parking garage;

    b. Entrances to the dog run and pet spa area, outdoor courtyard, roof terrace, and common area event space had thresholds that were too steep without being beveled or tapered;

    c. The balcony in one of the residential units shown to the testers was too shallow;

    d. The doors from residential units to the units' balconies had too steep of a threshold without being beveled or tapered;

    e. Residential unit bedroom and bathroom doors were too narrow;

    f. Residential unit environmental controls in each of the units shown to the testers were not in an accessible location; and

    g. The bathroom in one of the residential units shown to the testers lacked clear floor space.

51. When the testers asked the leasing agent if the residential unit bathroom walls were reinforced to allow for installation of grab bars, as required by law, he said he did not know.

52. The leasing agent told the testers that parking spaces in the Astor on 3rd parking garage were available for tenants to rent and could also be accessed by visitors.

***Defendants' Active and Recent Design and Construction Projects***

53. The FHJC has identified at least seven other multi-family residential apartment buildings that Defendant NYBA, professional engineer Naresh Mahangu, and/or Defendant DNYS are currently developing or recently completed in New York City. These active projects include at least three additional multi-family residential developments Mahangu and DNYS are currently developing together.

54. In September 2022, DNYS and Mahangu filed an application with the DOB for permits to construct a new 15-story, 75-unit residential building at 362 Livingston

11

Street in Downtown Brooklyn. On the DOB application, Katz of DNYS is listed as the owner of 362 Livingston and Mahangu of NYBA is listed as the architect of record.

55. In September 2022, DNYS and Mahangu also filed an application with the DOB for permits to construct a new 6-story mixed-use building with 137 residential units at 2-24 26th Avenue in Astoria, Queens. On the DOB application, Katz is listed as the owner of 2-24 26th Avenue and Mahangu of NYBA is listed as the architect of record.

56. In February 2022, DNYS and Mahangu filed an application with the DOB for permits to construct a new 75-foot-tall mixed-use building with 134 residential units at 575 Grand Street in Williamsburg, Brooklyn. On the DOB application, Katz of DNYS is listed as the owner of 362 Livingston and Mahangu of NYBA is listed as the architect of record. When completed, 30% of 575 Grand Street's 186 units will be designated as affordable housing units with below-market rate rents.

57. In February 2022, Mahangu filed an application with the DOB for permits to construct an 11-story mixed-use building with 96 residential units at 526 Baltic Street in Gowanus, Brooklyn. On the DOB application, Mahangu of NYBA is listed as the architect of record for 526 Baltic.

58. Mahangu was the architect of record for a seven-story multi-family residential building with 16 residential units at 2809 Clarendon Road in Flatbush, Brooklyn. Five of the building's units are below-market affordable units available via NYC Housing Connect, the City's affordable housing lottery. The lottery for the 2809 Clarendon Road affordable units launched in February 2022.

59. Mahangu was the architect of record for an 11-story multi-family residential building at 1510 Gates Avenue in Bushwick, Brooklyn. 1510 Gates has 70 residential

12

units, including 21 below-market affordable units available via NYC Housing Connect. The lottery for the 1510 Gates affordable units launched in October 2021.

60. Mahangu of NYBA was the architect of record for a 10-unit multi-family residential building at 193 Greenpoint Avenue in Greenpoint, Brooklyn. The owner of 193 Greenpoint started leasing units to new tenants in November 2022. On November 20, 2022, The FHJC sent two testers to 193 Greenpoint. The FHJC's testers observed several inaccessible design features at 193 Greenpoint.

61. Based on Defendants NYBA and DNYS's regular and ongoing use of Defendant Mahangu—who was disciplined by the DOB for, among other things, "fail[ing] to comply with accessibility requirements for people with disabilities"—as the architect of record for their projects, The FHJC believes that it is likely that it will be injured by Defendants' future construction of additional multi-family residential buildings in New York City that are about to occur as defined by 42 U.S.C. § 3602(i).

**FIRST CAUSE OF ACTION**
(Fair Housing Act – All Defendants)

62. Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

63. The residential units at Astor on 3rd are "covered multi-family dwellings" as defined by 42 U.S.C. § 3064(f)(7).

64. Defendants have designed and constructed covered multi-family dwellings and common use areas at Astor on 3rd.

65. As a direct and proximate result of these Defendants' failure to design and construct Astor on 3rd in compliance with the accessibility requirements of the Fair Housing

13

Act, inaccessible dwellings have been constructed in New York City that reduce housing opportunities for persons with physical disabilities.

66. As a direct and proximate result of these Defendants' failure to design and construct Astor on 3rd in compliance with the accessibility requirements of the Fair Housing Act, Plaintiff FHJC has suffered, and will continue to suffer damages, including diversion of resources and frustration of mission.

67. These Defendants' failure to design and construct Astor on 3rd in compliance with the accessibility requirements of the FHA was intentional, willful, or done with reckless disregard.

**SECOND CAUSE OF ACTION**
(Americans with Disabilities Act – All Defendants)

68. Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

69. The parking garage at Astor on 3rd is designated for public use and is a public accommodation as defined by 42 U.S.C. § 12181(7).

70. The parking garage at Astor on 3rd and the facilities and accommodations appurtenant to the public use of the parking garage are subject to the prohibition on discrimination contained in 42 U.S.C. § 12182(a) and are subject to the design and construction requirements of 42 U.S.C. § 12183(a)(1).

71. Plaintiff has identified ADA violations in the Astor on 3rd parking garage.

72. Defendants DNYS, Third Street, NYBA, and Mahangu have failed to design and construct the parking garage at Astor on 3rd in a manner that the facilities are readily accessible to, and usable by, people with physical disabilities.

73. As a direct and proximate result of these Defendants' failure to design and construct the Astor on 3rd parking garage in compliance with the accessibility requirements of the ADA, public accommodations have been constructed in New York City that are inaccessible to persons with physical disabilities.

74. As a direct and proximate result of these Defendants' failure to design and construct Astor on 3rd parking garage in compliance with the accessibility requirements of the ADA, Plaintiff FHJC has suffered, and will continue to suffer damages, including diversion of resources and frustration of mission.

75. These Defendants' failure to design and construct Astor on 3rd in compliance with the accessibility requirements of the ADA was intentional, willful, or done with reckless disregard.

## THIRD CAUSE OF ACTION
(New York State Human Rights Law – All Defendants)

76. Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

77. Plaintiff is a person as defined by New York Executive Law § 292(1).

78. Astor on 3rd is a "housing accommodation" as defined by New York Executive Law § 292(10).

79. Defendants designed and constructed Astor on 3rd in violation of the accessibility requirements found in New York Executive Law § 296(18)(3) and the New York State Uniform Fire Prevention and Building Code.

80. As a direct and proximate result of Defendants' failure to design and construct Astor on 3rd in compliance with the accessibility requirements of the NYSHRL, Plaintiff has suffered damages, including diversion of resources and frustration of mission.

81. Defendants' failure to design and construct Astor on 3rd in compliance with the accessibility requirements of the NYSHRL was intentional, willful, or with reckless disregard.

**FOURTH CAUSE OF ACTION**
(New York City Human Rights Law – All Defendants)

82. Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

83. Plaintiff is person as defined by New York City Administrative Code § 80-102(1).

84. Astor on 3rd is a "housing accommodation" as defined by New York City Administrative Code § 80-102(10).

85. Defendants designed and constructed Astor on 3rd in violation of the accessibility requirements found in New York City Administrative Code § 27-292.8296(18)(3).

86. By doing so, these Defendants are discriminating in the furnishing of facilities or services in connection with housing accommodations based on disability in violation of New York City Administrative Code § 8-107(5)(a)(2).

87. As a direct and proximate result of Defendants' failure to design and construct Astor on 3rd in compliance with the accessibility requirements of the NYCHRL, Plaintiff has suffered damages, including diversion of resources and frustration of mission.

88. Defendants' failure to design and construct Astor on 3rd in compliance with the accessibility requirements of the NYCHRL was intentional, willful, or with reckless disregard.

89. Plaintiff has caused to be served a copy of this Complaint upon the City Commission on Human Rights and Corporation Counsel, pursuant to New York City Administrative Code § 8-502(c).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

a) Declaring that Defendants' discriminatory practices violate the FHA, ADA, NYSHRL, and NYCHRL;

b) Enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation with Defendants from discriminating on the basis of disability by failing to design and construct covered multi-family dwellings in compliance with the accessibility requirements of the FHA, NYSHRL, and NYCHRL, and failing to design and construct public accommodations in compliance with the accessibility requirements of the ADA;

c) Enjoining Defendants and their agents, employees, and successors, and all other persons in active concert or participation with Defendants to:

  i. Make or pay for all necessary retrofitting in the multi-family dwellings and common areas of Astor on 3rd;

  ii. Make all necessary modifications to the design and construction of multi-family covered dwellings currently planned for construction or under construction in New York City;

  iii. Make all necessary modifications to their policies, practices, and procedures to comply with fair housing laws;

17

  iv. Train all management, agents, and employees on fair housing laws, including accessibility requirements for multi-family residential dwellings; and

  v. Allow monitoring of their design and construction of covered multi-family dwellings and public accommodations for compliance with the accessibility requirements of the FHA, ADA, NYSHRL, and NYCHRL;

d) Awarding such damages to Plaintiff as will fully compensate it for injury caused by Defendants' unlawful practices;

e) Awarding punitive damages to Plaintiff;

f) Awarding Plaintiff reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and

g) Granting Plaintiff such other further relief as may be just and proper.

Dated: February 22, 2023
   New York, New York

            EMERY CELLI BRINCKERHOFF
            ABADY WARD & MAAZEL LLP

            Diane L. Houk
            Nick Bourland

            600 Fifth Avenue, 10th Floor
            New York, New York 10020
            dhouk@ecbawm.com
            nbourland@ecbawm.com
            (212) 763-5000

            *Attorneys for Plaintiff*