UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FAIR HOUSING JUSTICE CENTER, INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>NY BUILDING ASSOCIATES INC., NARESH MAHANGU, DEVELOPING NY STATE, LLC, THIRD STREET EQUITY, LLC, and DURUKAN DESIGN INC.,<br><br>*Defendants.* | No. 23 Civ. 1396 (LDH)<br><br>**SETTLEMENT AGREEMENT** |

This Settlement Agreement (the "Agreement") is entered into by and between Plaintiff Fair Housing Justice Center, Inc. ("FHJC" or "Plaintiff"); and Defendants Developing NY State, LLC and Third Street Equity, LLC (collectively, the "Developer Defendants"); NY Building Associates Inc.; Naresh Mahangu, and Durukan Design Inc. (collectively with the Developer Defendants, the "Defendants"), by and through their respective counsel (together, the "Parties," and each a "Party").

**WHEREAS,** on February 22, 2023, Plaintiff commenced the above-captioned action (the "Lawsuit");

**WHEREAS,** on December 15, 2023, Plaintiff filed its First Amended Complaint, alleging that Defendants discriminated on the basis of disability in the design and construction of Astor on 3rd, a multi-family residential rental building with 60 apartments having an address of 26-41 3rd Street, Queens, New York, in violation of the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* (the "FHA"); the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*; the New York State Human Rights Law, New York Executive Law § 296, *et seq.*; and the New York City Human Rights Law, New York City Admin. Code §§ 8-107, *et seq.*.

1

**WHEREAS,** Defendants have asserted defenses to the Lawsuit and deny each of the claims asserted by Plaintiff therein, and by entering into this Agreement do not admit the same;

**WHEREAS**, the Parties desire to resolve the claims asserted in the Lawsuit and, to avoid the expense of protracted litigation, agree that this Agreement reflects a full resolution of the disputes between them; and

**WHEREAS**, the Parties request that the Court approve and enter the Stipulation of Settlement, and retain jurisdiction to enforce the terms of this Agreement;

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by and among the Parties that the claims asserted in the Lawsuit will be compromised, settled, released, and dismissed upon and subject to the terms of this Agreement, as follows:

## SECTION I

## <u>DEFINITIONS</u>

1. As used in this Agreement, the following terms will have the following meanings:

   a.    The "Subject Property" or "Astor on 3rd" means the multi-family residential rental building located at 26-41 3rd Street, Queens, New York; and

## SECTION II

## <u>TERM AND SCOPE OF AGREEMENT</u>

2.    The term of this Agreement is three (3) years after the Developer Defendants comply with the Common Use Area Retrofits described in Paragraph 17-18 and attached Exhibit A (the "Term").

3.    Unless otherwise specified, all obligations under the Agreement commence thirty (30) days from the date the Agreement is executed by all parties (the "Effective Date"), and shall remain in effect for the Term.

2

4.      Unless otherwise specified, the Agreement is binding on, and inures to the benefit of, the Defendants and all their employees, representatives, officers, heirs, affiliates, assigns, subsidiaries, or successors in interest.  This Agreement resolves all disputes existing, and whether known or unknown, as of the date of the Agreement between Plaintiff, the Defendants and all their members, owners, employees, representatives, officers, heirs, affiliates, assigns, subsidiaries, or successors in interest, related to the Subject Property.

5.      With one exception, the United States District Court for the Eastern District of New York will retain jurisdiction over the Parties to enforce the Agreement for the length of the Term.  The exception is that the Court shall retain jurisdiction over Plaintiff and the Developer Defendants following expiration of the Term in the event a dispute arises with respect to the Developer Defendants' retrofits of the Subject Property, which Plaintiff and the Developer Defendants are unable to resolve informally.

6.      Before seeking judicial relief by filing a motion with the Court, the Parties will endeavor in good faith to informally resolve any differences regarding compliance and interpretation of the Agreement.  The moving Party will give each other Party written notice of any instance of alleged noncompliance with this Agreement and afford each affected Party forty-five days to cure any alleged noncompliance.  The Parties agree to confer during that forty-five-day cure period and attempt in good faith to resolve the alleged noncompliance by agreement.  If the Parties are unable to reach an agreement at the conclusion of the forty-five-day cure period, the moving Party may seek judicial relief.

## SECTION III

## MONETARY RELIEF

7.      The Defendants will pay the total global sum of Five Hundred Thousand Dollars ($500,000.00) in full and final settlement of all of Plaintiff's claims against the Defendants in

this Lawsuit, including but not limited to damages, attorneys' fees, and costs (the "Settlement Amount"), with Two Hundred Thousand Dollars ($200,000.00) to be paid by the Developer Defendants within one year of the Effective Date; Two Hundred Thousand Dollars ($200,000.00) to be paid by Defendants NY Building Associates, Inc. and Mahangu within thirty (30) days of the Effective Date; and One Hundred Thousand Dollars ($100,000.00) to be paid by Defendant Durukan Design, Inc. within thirty (30) days of the Effective Date. The Settlement Amount shall be paid via check or wire transfer to Emery Celli Brinckerhoff Abady Ward & Maazel LLP ("ECBAWM"), on behalf of Plaintiff. No Defendant shall have any obligation under this Decree or otherwise for any portion of the Settlement Amount beyond that assumed as described in this paragraph.

8.      Concurrently with the execution of this Agreement, ECBAWM will furnish Defendants with the mailing and/or wiring instructions for the payment of the Settlement Amount. No Defendant shall have any obligation to deliver any portion of the Settlement Amount unless and until Plaintiff's counsel has provided all Defendants with an executed IRS Form W-9 effective for the payee of the Settlement Amount.

9.      Concurrently with the execution of this Agreement, the Defendants will deliver to ECBAWM a signed Stipulation and Order of Dismissal with prejudice in the form attached as Exhibit I. The Parties agree to stipulate that the order will vest the Court with jurisdiction for the sole purpose of enforcing the terms of this Agreement. Counsel for Plaintiff will file the executed Stipulation and Order of Dismissal with the Court to dismiss the Defendants within five business days after ECBAWM receives settlement payments from Defendants NY Building Associates, Inc. and Mahangu, and Defendant Durukan Design, Inc., respectively.

10.     If the Developer Defendants' full settlement payment is not paid within one year of the Effective Date, *see* Paragraph 8, *infra*, a judgment for the amount of Two Hundred Thousand Dollars ($200,000.00) minus any payments previously made shall be entered against each of the Developer Defendants.  Before filing a judgment or executing a lien, Plaintiff shall provide each Developer Defendant written notice, via the Developer Defendants' counsel, that the payment is late and that the Developer Defendants have five (5) business days from receipt of such notice to cure such deficiency.

11.     Concurrently with the signing of this Agreement, the Developer Defendants shall each execute the Affidavits of Confession of Judgment (the "Affidavits"), which are attached as Exhibits J and K.  The Affidavits shall be held in escrow by Plaintiff's counsel and shall not be filed and/or recorded unless the Developer Defendants fail to cure any deficiency after receiving notice as provided for in the preceding paragraph.  Upon full payment of the Developer Defendants' settlement amount, the original Affidavits shall be returned to the Developer Defendants' counsel of record.

12.     The Developer Defendants each agree not to file for bankruptcy for at least ninety (90) days after the last payment is made pursuant to this Agreement.

### SECTION IV

### PROVISIONS RELATING TO SUBJECT PROPERTY RETROFITS

13.     The Parties agree that the Settlement Amount does not include the cost of performing the retrofits described in the Retrofit Plans or otherwise required under the terms of the settlement, which costs shall be borne by the Developer Defendants.

14.     The Retrofit Plans are contained in Exhibit A hereto and are incorporated into and made enforceable as part of this Agreement.

### A. Common Use Area Retrofits

15.     Within one (1) year of the Effective Date, the Developer Defendants will retrofit conditions in the common use areas at the Subject Property, as set forth in Exhibit A hereto.

16.     Within sixty (60) days of the Effective Date, the Developer Defendants shall notify residents of the Subject Property of the work to be performed in the common use areas of the Subject Property, by providing them with the Notice of Retrofits to Public and Common Use Areas in a form substantially similar to the form annexed hereto as Exhibit B. Beginning no later than sixty days after the Effective Date and continuing until the  common use area retrofits are completed, the Developer Defendants shall provide prospective residents of the Subject Property with the same notice.

### B. Individual Dwelling Unit Retrofits

17.     Unless otherwise specified in the Retrofit Plans, the Developer Defendants will retrofit the individual dwelling unit conditions set forth in the Retrofit Plans at the earlier of (i) unit turnover, (ii) within forty-five (45) days of request by a current resident, or (iii) the third anniversary of the Effective Date, in the event of no unit turnover or request from current resident of the unit.  Nothing in this Agreement prohibits Developer Defendants from performing any individual dwelling unit retrofits in multiple units at one time or on a planned schedule sooner than any of the triggering events listed above.

18.     If any individual dwelling unit(s) is/are not vacated during the Term and/or not retrofitted upon tenant request and, as a result, individual dwelling unit retrofits scheduled as "on turn" are not completed in any such unit(s), the Developer Defendants shall provide written notice of the retrofits to be performed to the residents of any such unit(s) no later than ninety days prior to the conclusion of the Term, and shall offer reasonable per diem payments for displacement caused by the retrofitting work, if any, as described in paragraph 19 below.

6

19.    If a resident of a unit scheduled to undergo a retrofit pursuant to Exhibit A is dislocated from the unit for more than a fourteen (14) consecutive hour period, Developer Defendant (at its option) shall either provide the resident with alternative housing in an available furnished unit at the Subject Property or pay such resident the applicable federal government per diem rate for food and lodging for the New York City area (currently available at https://www.gsa.gov/travel/plan-book/per-diem-rates) for each day or half-day such resident is dislocated or will experience undue inconvenience or hardship.  If the per diem option is selected, the payment shall be made prior to the commencement of any retrofit work on the resident's unit, so that the resident can use the payment to obtain alternative living accommodations while dislocated.

### C.  Availability of Retrofits upon Resident Request

20.    Within forty-five (45) days of the Effective Date, the Developer Defendants shall notify residents of the Subject Property of retrofits available to them upon the request of a resident by providing them with a copy of the Notice of Retrofits to Current Residents in a form substantially similar to the form annexed hereto as Exhibit C.  Beginning no later than forty-five (45) days after the Effective Date and continuing until the end of the Term, the Developer Defendants shall, at the time of application, notify prospective residents of the Subject Property of the retrofits available to them by providing them with a copy the Notice of Retrofits Available on Request for New Residents in a form substantially similar to the form annexed hereto as Exhibit D.

21.    Unless a different timeframe is provided in the Retrofit Plan (Exhibit A), within thirty (30) days of a resident  requesting a modification set forth on the Notice of Retrofits to Current Residents (Exhibit C), the Developer Defendants shall make the requested modification.

22.     Within thirty (30) days of a prospective resident requesting a modification set forth in the Notice of Retrofits Available on Request for New Residents (Exhibit D), the Developer Defendants shall make the requested modification, except that, if the dwelling unit to be leased by the prospective resident is occupied at the time the request is made, the time to perform any such retrofit shall run from the date the occupying resident vacates the dwelling unit or the prospective resident has executed a lease agreement, whichever is later.  For prospective residents, the thirty (30) day completion period for "on request" retrofits does not apply to those retrofits specified in the Retrofit Plan to be completed within a different time period, in which case the time period specified in the Retrofit Plan shall run from the date the occupying resident vacates the dwelling unit or the prospective resident has executed a lease agreement, whichever is later.  Any prospective resident who has executed a lease agreement and requests any offered retrofit will be given the opportunity to delay move-in date until after the completion of the requested retrofit work.

### D.  Best Efforts

23.     The Developer Defendants shall use their best efforts to modify the conditions set forth in the Retrofit Plans in the manner agreed-to pursuant to this Agreement.  In the event that, under field conditions that the Parties could not have reasonably anticipated at the time this Agreement was negotiated and executed, the Developer Defendants determine that a condition cannot be retrofitted in the manner set forth in the Retrofit Plans, the Developer Defendants will so advise Plaintiff in writing by providing a description of the condition with supporting photographs and the proposed revised manner of retrofitting the condition.  The Developer Defendants will seek Plaintiff's written consent to the proposed revised manner of retrofitting the condition.  Plaintiff will not unreasonably withhold such consent, and Plaintiff and the Developer Defendants will work together in good faith to resolve any disagreement that arises.

24.     The Developer Defendants shall use their best efforts to comply with the deadlines set forth in Section IV of this Agreement.  In the event the Developer Defendants are unable to comply with any such deadline, despite their best efforts, the Developer Defendants shall seek written consent for a reasonable extension of time from Plaintiff at least thirty (30) days prior to the deadline.  Any request for an extension shall be in writing and describe with specificity which deadline cannot be met and the reason it cannot.  Plaintiff will not unreasonably withhold its consent to a reasonable extension of time for the Developer Defendants to perform the retrofit.  The deadlines under this Section IV may be extended or modified by written agreement of the Developer Defendants and Plaintiff without further order of the Court, so long as the deadline would not affect the Term.

### E.  Inspection of Retrofits to Specific Units and Common Areas

25.     The Developer Defendants shall retain, at their cost, an inspector to review any proposed retrofit plans or drawings that are issued for construction and to inspect the actual constructed retrofits performed by the Developer Defendants under this Agreement (the "Inspector").  At least thirty (30) days prior to the Inspector performing any services to the Developer Defendants under this Agreement, Developer Defendants will notify Plaintiff of the chosen inspector's identity for Plaintiff's approval.  Plaintiff's approval of the chosen Inspector shall not be unreasonably withheld.  The Parties agree that the inspector will not be affiliated with or employed by any person or entity who performed work for any Party in this action as an expert witness or site inspector.

26.     The Inspector shall conduct three on-site inspections of the completed retrofits to determine whether the retrofits are compliant with this Agreement.  Subject to the availability and reasonable judgment of the Inspector, the Parties agree that the first construction inspection will occur within sixty (60) days after the common use area retrofits detailed in the Retrofit Plans

9

are completed and shall include all such retrofits at the Subject Property and all dwelling unit retrofits that have been completed at the Subject Property as of the date of the inspection. The final inspection will occur within sixty (60) days of the end of the Term and will include all "on turn" and "as requested" unit retrofits not previously inspected.

27.     For each of the inspections required under this Agreement, the Developer Defendants will ensure the Inspector has access to the relevant common use areas and dwelling units to be inspected. In the event a resident denies access to the unit during the date of the inspection, the inspection of that unit may be completed on a different day by video conference with the Inspector or through the use of photographs provided to the Inspector that show the location and relevant measurements of the particular condition that has been retrofitted.

28.     Within sixty (60) days after each of the inspections detailed in Paragraph 26, the Inspector shall provide a written report to the Developer Defendants and Plaintiff (the "Report"). The Report shall identify which common areas and/or apartments (by unit floor and number) were inspected. The Report shall identify any non-compliant items; and, for compliant items, confirmation that the work has been completed in accordance with the Retrofit Plans (as attached as Exhibit A) and in a good and workmanlike manner. For any non-compliant item in a dwelling unit, the Report will identify the dwelling unit and the non-compliant condition. The Developer Defendants agree to correct any deficiency identified by the Inspector within thirty (30) days of the Report, and the Developer Defendants agree to repeat this process until the Inspector reports in writing that all retrofits have been performed in the manner consistent with the Retrofit Plans or, if the Plaintiff and the Developer Defendants have mutually agreed to depart from the Retrofit Plans, that the retrofit has been performed consistent with that agreement, and in a good and workmanlike manner.

## F. Retrofitting Records

29.    The Developer Defendants shall maintain copies of the Notice of Retrofits to Public and Common Use Areas provided to current residents and prospective residents (Exhibit B); the Notice of Retrofits to Current Residents (Exhibit C); the Notice of Retrofits Available on Request for New Residents (Exhibit D); documents sufficient to show a request by any resident or prospective resident for any of the modifications set forth on Exhibits C or D; and documents sufficient to show the response by the Developer Defendants to any such request, including the number and floor of the dwelling unit in question.  The Developer Defendants shall allow Plaintiff to review these records and only these records annually upon reasonable notice until the end of the Term. Nothing in this paragraph shall require the Developer Defendants to disclose to Plaintiff the identity of any resident or prospective resident or any personal data concerning such persons, and Plaintiff agrees to keep confidential any information disclosed by the Developer Defendants pursuant to this paragraph, except with respect to its attorneys and experts and except in connection with any action, proceeding, or motion to enforce this Agreement.

## SECTION V

## FAIR HOUSING POLICIES

### A. For The Developer Defendants

30.    Forty-five (45) days after completing the common use area retrofits at the Subject Property, the Developer Defendants shall provide to the New York City non-profit organizations identified on Exhibit E hereto a letter substantially in the form of Exhibit F that includes a description of types of units at the Subject Property, links to the Subject Property's web pages, and  notice that modifications to increase accessibility may be available at no cost to the resident, as set forth in the applicable Retrofit Plan,  Exhibit A.

31.     Beginning thirty (30) days after the Effective Date and for the Term, the Developer Defendants shall include the following language on the residential rental applications for the Subject Property:

> "Our company is committed to equal housing opportunity.  We do not discriminate based on race, color, national origin, religion/creed, gender, disability, familial or marital status and partnership status, sexual orientation, source of income, gender identity and expression,, age, alienage or citizenship status, criminal record, lawful occupation, military status, status as a survivor of domestic violence or stalking or other prohibited bases."

Nothing prevents the Developer Defendants from modifying the list of protected characteristics in this statement to be consistent with federal, state, and local law as those laws may be amended during the Term of this Agreement.

32.     Beginning thirty (30) days after the Effective Date and for the Term, the Developer Defendants shall include the fair housing logo, which is attached hereto as Exhibit G, or the phrase "Equal Housing Opportunity" on the website for the Subject Property, on any print advertising dedicated to the Subject Property, and on the residential rental applications for the Subject Property.

33.     Beginning thirty (30) days after the Effective Date and for the Term, the Developer Defendants shall display at the Subject Property, in a manner plainly visible to residents and guests, a United States Department of Housing and Urban Development fair housing poster, in the form attached hereto as Exhibit H, having dimensions of at least 11 inches by 14 inches.

**B.  For Defendants NY Building Associates Inc. and Durukan Design Inc.**

34.     Beginning thirty (30) days after the Effective Date and for the Term, Defendants NY Building Associates Inc. and Durukan Design Inc. shall include the fair housing logo, which

is attached hereto as Exhibit G, or the phrase "Equal Housing Opportunity" on their company websites and on any print advertisements.

## SECTION VI

## **TRANSFER OF INTEREST IN THE SUBJECT PROPERTY**

35.     The sale or transfer, in whole or in part, of any of the Developer Defendants' interest(s) in the Subject Property shall not affect the Developer Defendants' obligations to complete the retrofits specified in this Agreement.  Should the Developer Defendants wish to sell or transfer all or part of their interest(s) in the Subject Property prior to the completion of such retrofits, the Developer Defendants shall either (i) provide written certification to Plaintiff of completion of the retrofits required pursuant to this Agreement prior to the sale or transfer of the property; or (ii) obtain the written agreement of the buyer(s)/transferee(s) that Developer Defendants may  perform the retrofits in accordance with the terms of this Agreement after the new owner takes possession of the subject property ("Retrofit Access Agreement"); or (iii) obtain the agreement of the buyer/transferee   to perform any remaining obligations under this Agreement ("Retrofit Assumption Agreement") .  In the event that the Developer Defendants enter into a Retrofit Assumption Agreement with a buyer or transferee of all or part of the Developer Defendants' interest(s) in the Subject Property, the Developer Defendants shall provide Plaintiff with a copy of such Retrofit Assumption Agreement within ten (10) days after the finalization of any sale or transfer of any of the Subject Property.

## SECTION VII

## NOTICES

36.     All notices pursuant to this Agreement shall be sent to the following persons or such alternative contact person as any Party informs all other Parties in writing.

37.     Any notice to FHJC required by this Agreement shall be sent via email to:

Fair Housing Justice Center, Executive Director (fhjc@fairhousingjustice.org),

with a copy of any notice to:

Diane Houk (dhouk@ecbawm.com);
Nick Bourland (nbourland@ecbawm.com).

38.    Any notice to the Developer Defendants in connection with this Agreement shall

be sent via email to:

Jacob Katz (jacob@developingnys.com).

with a copy of any notice to:

Theresa L. Kitay (tkitay@bakerdonelson.com);
D. Sterling Kidd (skidd@bakerddonelson.com).

39.    Any notice to Defendants NY Building Associates Inc. and Mahangu in

connection with this Agreement shall be sent via email, delivery and read receipt requested, to:

Naresh Mahangu, P.E. (nmahangu@yahoo.com; nmahangu1978@gmail.com),

with a copy of any notice to:

Martin A. Schwartzberg (maschwartzberg@mdwcg.com).

40.    Any notice to Durukan Design Inc. in connection with this Agreement shall be

sent via U.S. mail to:

Funa Wester, Principal
Durukan Design | New York
55 Washington Street, Suite 508
Brooklyn, NY 11201

with a copy of any notice to:

Albert M. Saltz, Esq.
Saltz Nalibotsky
101 Lindenwood Drive, Suite 225
Malvern, PA 19355

## SECTION VIII

## RELEASES

41.     Except for the right to enforce the terms of this Agreement, including the obligations assumed by Defendants hereunder, and in exchange for adequate consideration as set forth herein, Plaintiff, on behalf of its directors, officers, parents, subsidiaries, affiliated entities, successors, assigns, trustees, and insurers, and employees, agents, and attorneys in their capacity as employees, testers, agents, or attorneys (collectively, the "Plaintiff Releasors") fully and forever releases, acquits, and forever discharges with prejudice Defendants and each and all of their assigns, parents, subsidiaries, affiliates, predecessors, and successors in interest (collectively, "Released Entities"), and each and all of the Released Entities' past and/or present principals, employees, agents, representatives, managers, officers, directors, shareholders, partners, members, heirs, attorneys, and insurers (together with the Released Entities, collectively, the "Releasees") from any and all liability, claims, or rights of action, damages, costs, expenses, and compensation of any kind or nature whatsoever, in law, equity or otherwise, whether known or unknown, vested or contingent, suspected or unsuspected, arising from, arising out of, relating to, or in connection with (1) the design or construction of the Subject Property;  and () the facts, matters, claims, causes of action, and allegations in this Lawsuit, including, but not limited to, any and all claims for injunctive relief, indemnification, contribution, compensatory damages, punitive damages, attorneys' fees, and costs, as well as any and all claims for violations of the Fair Housing Act, 42 U.S.C. § 3601 et seq.; the New York State Human Rights Law, New York Executive Law § 296 et seq.; and the New York City Human Rights Law, New York City Admin. Code §§ 8-107 et seq.; the Americans with Disabilities Act and its implementing regulations, 42 U.S.C. § 1985, New York State Civil Rights Law, and the Building Code of the City of New York, as well as for common law

negligence (hereinafter the "Released Claims") related to the Subject Property, providing however, that the Released Claims will not include any claims to enforce any provision of this Agreement.

42.     This release encompasses claims in any way arising out of, concerning, or relating to the Lawsuit including, without limitation, the assertion of any defenses or counterclaims therein, or any rights to discovery therein.

43.     Except for the right to enforce the terms of this Agreement, including the obligations assumed by Plaintiff hereunder, and in exchange for adequate consideration as set forth herein, each Defendant fully and forever releases, acquits, and forever discharges with prejudice, subject to the terms of this Agreement, Plaintiff and each other Defendant and each and all of their assigns, parents, subsidiaries, affiliates, predecessors and successors in interest (collectively, "Released Plaintiff and Defendant Entities"), and each and all of the Released Plaintiff and Defendant Entities' past and/or present principals, employees, agents, representatives, managers, officers, directors, shareholders, partners, members, heirs, affiliates, attorneys, and insurers (together with the Released Plaintiff and Defendant Entities, collectively, the "Plaintiff and Defendant Releasees") from any and all liability, claims, or rights of action, damages, costs, expenses, and compensation of any kind or nature whatsoever, in law, equity or otherwise, whether known or unknown, vested or contingent, suspected or unsuspected, arising from, arising out of, relating to, or in connection with (1) the design or construction of the Subject Property; and (2) the facts, matters, claims, causes of action, and allegations asserted in this Lawsuit, including, but not limited to, any and all claims for injunctive relief, indemnification, contribution, compensatory damages, punitive damages, attorneys' fees, and costs, as well as any and all claims for violations of the Fair Housing Act, 42 U.S.C. § 3601 et

16

seq.; the New York State Human Rights Law, New York Executive Law § 296 et seq.; and the New York City Human Rights Law, New York City Admin. Code § § 8-107 et seq, the Americans with Disabilities Act and its implementing regulations, 42 U.S.C. § 1985, New York State Civil Rights Law, and the Building Code of the City of New York, as well as for common law negligence (hereinafter, the "Defendant Released Claims") related to the Subject Property, provided however, that the Defendant Released Claims will not include any claims to enforce any provision of this Agreement.

44.     Defendants, their officers, employees, successors, affiliates, and assigns agree not to retaliate against, intimidate, or threaten Plaintiff or Plaintiff's directors or employees on account of them having aided or encouraged Plaintiff or having aided or encouraged any other person in the exercise or enjoyment of any right protected by federal, New York State or New York City fair housing laws.

**SECTION IX**

**<u>NO ADMISSIONS</u>**

45.     Nothing contained herein shall be deemed to be an admission of liability by Defendants nor shall anything contained in this Agreement be deemed an admission that Defendants have in any manner or way violated any rights defined in the constitutions, statutes, ordinances, rules or regulations of the United States, the State of New York, or the City of New York, which Defendants expressly deny.  The Parties have entered into this Agreement solely for the purpose of avoiding the burdens and expense of protracted litigation.

**SECTION X**

**CONSTRUCTION AND SEVERABILITY**

46.     This Agreement will be deemed to have been jointly drafted, and no provision herein will be interpreted or construed for or against any Party because such Party drafted or requested such provision or this Agreement as a whole.

47.     Any part or provision of this Agreement which is prohibited by law or which is held to be void or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.

48.     This Agreement contains all the terms and conditions agreed upon by the Parties hereto, and no oral agreement entered into at any time, nor any written agreement entered into prior to the execution of this Agreement regarding the subject matter of this Agreement will be deemed to exist, to bind the Parties hereto, or to vary the terms and conditions contained herein. Any amendment to this Agreement or waiver of this Agreement must be in writing by each affected Party.  No waiver by any Party hereto of any breach by any other Party to any provision of this Agreement shall be deemed a waiver of any other breach or provision of this Agreement.

49.     This Agreement will be governed by and construed in accordance with the laws of the State of New York and applicable federal law.

50.     The Parties to this Agreement expressly represent and warrant that they have full legal capacity to enter into this Agreement, that they have carefully read and fully understand this Agreement, that they have had the opportunity to review this Agreement with their attorneys, and that they have executed this Agreement voluntarily, without duress, coercion, or undue influence.

51.     This Agreement may be executed in any number of counterparts and each such counterpart will be deemed to be an original.  For purposes of executing this Agreement, a

18

document signed and transmitted by facsimile or email will be treated as an original document

and have the same binding legal effect as an original signature on an original document.


THE REMAINDER OF THIS PAGE IS LEFT INTENTIONALLY BLANK.

THE FOLLOWING SIGNATURES BY ATTORNEYS ARE AS TO FORM ONLY:

**EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP**

By: _Diane L Houk_

Date: 2/17/2026

Diane L. Houk
Nick Bourland
1 Rockefeller Plaza, 8th Floor
New York, NY 10020
(212) 763-5000

By: _Michele Cortese_

Date: 2.17.26

Michele Cortese
Interim Executive Director
Fair Housing Justice Center, Inc.

**SALTZ NALIBOTSKY**

By: _____

Date:

Albert M. Saltz
101 Lindenwood Dr., Suite 225
Malvern, Pennsylvania 19355

*Attorneys for Defendant Durukan Design Inc.*

By: _____

Date:

Funda Wester
Durukan Design Inc.

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ**

By: _____

Date:

Theresa L. Kitay
Dean Sterling Kidd
3414 Peachtree Road, NE
Monarch Plaza, Suite 1500
Atlanta, Georgia 30326
(404) 443-6745

*Attorneys for Defendants Developing NY State, LLC and Third Street Equity, LLC*

By: _____

Date:

Jacob Katz
Developing NY State, LLC

By: _____

Date:

Jacob Katz
Third Street Equity, LLC

20

THE FOLLOWING SIGNATURES BY ATTORNEYS ARE AS TO FORM ONLY:

**EMERY CELLI BRINCKERHOFF**
**ABADY WARD & MAAZEL LLP**


By: _____

Date:

Diane L. Houk
Nick Bourland
1 Rockefeller Plaza, 8th Floor
New York, NY 10020
(212) 763-5000


By: _____

Date:

Michele Cortese
Interim Executive Director
Fair Housing Justice Center, Inc.


**SALTZ NALIBOTSKY**

By: _____

Date:

Albert M. Saltz
101 Lindenwood Dr., Suite 225
Malvern, Pennsylvania 19355

*Attorneys for Defendant Durukan*
*Design Inc.*


By: _____

Date:

Funda Wester
Durukan Design Inc.


**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ**


By: _____

Date: 2/13/2026

Theresa L. Kitay
Dean Sterling Kidd
3414 Peachtree Road, NE
Monarch Plaza, Suite 1500
Atlanta, Georgia 30326
(404) 443-6745

*Attorneys for Defendants Developing NY*
*State, LLC and Third Street Equity, LLC*


By: _____

Date:   2/12/2026

Jacob Katz
Developing NY State, LLC


By: _____

Date:2/12/2026

Jacob Katz
Third Street Equity, LLC

20

THE FOLLOWING SIGNATURES BY ATTORNEYS ARE AS TO FORM ONLY:

| | |
|---|---|
| **EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP** | **BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ** |

By: _____         By: _____

Date:                                     Date:

Diane L. Houk                             Theresa L. Kitay
Nick Bourland                             Dean Sterling Kidd
1 Rockefeller Plaza, 8th Floor            3414 Peachtree Road, NE
New York, NY 10020                        Monarch Plaza, Suite 1500
(212) 763-5000                            Atlanta, Georgia 30326
                                          (404) 443-6745

By: _____         *Attorneys for Defendants Developing NY
                                          State, LLC and Third Street Equity, LLC*
Date:

Michele Cortese                           By: _____
Interim Executive Director
Fair Housing Justice Center, Inc.         Date:

                                          Jacob Katz
**SALTZ NALIBOTSKY**                      Developing NY State, LLC

By: _____         By: _____

Date: 2/20/26                             Date:

Albert M. Saltz                           Jacob Katz
101 Lindenwood Dr., Suite 225             Third Street Equity, LLC
Malvern, Pennsylvania 19355

*Attorneys for Defendant Durukan
Design Inc.*

By: _____

Date: 02/1972026

Funda Wester
Durukan Design Inc.

20

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

By: _____

Date: 2/18/26

Martin A. Schwartzberg
175 Pinelawn Road, Suite 250
Melville, New York 11747

*Attorneys for Defendants NY Building
Associates Inc. and Naresh Mahangu*

By: _____

Date: 02/18/26

Naresh Mahangu
NY Building Associates Inc.

By: _____

Date: 02/18/26

Naresh Mahangu

It is so ORDERED this _____ day of _____, 2026.

_____
Hon. LaShann DeArcy Hall
UNITED STATES DISTRICT COURT JUDGE

21

## ASTOR ON 3rd
## Retrofit Plan

| | Source | Requirement | Issue | Retrofit |
|---|---|---|---|---|
| 2 | ADA/ NYC 2014 | On the push side of a swinging door, the bottom 10" must be smooth - surfaces must be within 1/16" of the same plane. Cavaties created by kick plates must be capped. | On the building entrance doors the bottom stile is only 8" tall and the plane of the glass is more than 1/16" from the plane of the stile. | ADA doors; add kickplate to 10" vertically from ground on push side. |
| 3 | ADA/ FHA / NYC 2014 | The emergency two-way communication device in the elevator cannot require voice communication. | The two-way emergency communication device requires voice communication. | Install flashing light acknowledging receipt of the alarm inside the elevator cars. |
| 4 | ADA/ FHA / NYC 2014 | On elevators where the door is centered, the finished dimensions must be at least 80" wide and 51" deep.  Where the door is to one side, the finished dimensions must be at least 68" wide and 51" deep. | On the small elevator, the door is off to one side and the finished dimensions are only 44" wide by 49" deep. | Install separate call buttons for the elevators so that the accessible elevator can be specifically called. |

2025-10-09

| | | | | |
|---|---|---|---|---|
| 5 | ADA/ FHA / NYC 2014 | Common  use interior doors must be openable with no more than 5-pounds force.  Fire doors must be openable with the minimum opening force permitted by the local building / fire official. | The full glass doors require about 21 pounds force to open. | Adjust closer on doors to 15 lbf if fire doors; 5 lbf if standard interior doors. |
| 6 | ADA / NYC 2014 | Interior and exterior signs identifying permanent rooms and spaes must have raised characters and have messages repeated in braille. | Signs identifying staris and trash rooms do not have braille. | Adjust signage to have Braille 48" AFF minimum to bottom of Braille characters. |
| 7 | ADA / FHA / NYC 2014 | The characters on interior and exterior signs identifying permanent rooms and spaces must contrast with the background, either light on dark or dark on light. | The unit identification signs do not provide the light on dark or dark on light contrast between the characters and background. | Adjust signage color contrast to comply. |
| | **Parking:** | | | |
| 9 | FHA / NYC 2014 | An accessible parking space must be at least 96" wide and the access aisle must be at least 60" wide for a total of 156" (13'). | There is a column in the accessible space #19, reducing the total width to 104" and partially blocking use of the access aisle.  Also, the car in the adjacent space partially covers the access aisle when parking. | See attached parking plan.  Space #19 will be decommissioned as an accessible space, including removal of access aisle. |
| 10 | FHA / NYC 2014 | An accessible parking space must be at least 96" wide and the access aisle must be at least 60" wide for a total of 156" (13'). | There is a column and drainpipe in the accessible space #14, reducing the total width to 100-1/2" and partially blocking use of the access aisle. | See attached parking plan.  Space to be converted to standard (not accessible) parking. |

2025-10-09

| | | | | |
|---|---|---|---|---|
| 11 | ADA / FHA / NYC 2014 | An accessible parking space must be at least 96" wide and the access aisle must be at least 60" wide for a total of 156" (13'). | There is a column and drainpipe in the accessible space #13, reducing the total width to 152-1/2" and partially blocking use of the access aisle. | See attached parking plan. Space #13 to be converted to standard (not accessible) parking. |
| 12 | ADA/ NYC 2014 | Minimum vertical clearance for van spaces and the vehicular route to the spaces is 98". | The vertical clearance is reduced to 89-1/2" by bolts on fire sprinkler pipe hangers along the route to the van accessible space. | Relocate the van accessible space to location indicated on attached parking plan.  The total width (with access aisle) will be 16', and the length of the space will be 18', which is compliant and border will be marked outside the drive aisle.  New location will have required vertical clearance and is on an accessible route to the accessible building entrance, as indicated on the attached parking plan. |
| 13 | ADA/FHA /NYC 2014 | Operable parts must be within accessible side reach (9"-54" AFF). | There is no obstruction.  The hook for the bicycle storage is about 73" AFF. | Lower some hooks or add additional rack within reach range and on accessible route.  Accessible bike spaces to be at least 5% of the total. |
| 15 | ADA/ FHA / NYC 2014 | Object may not protrude into the circulation path by more than 4" when bottom edge is 27"-80" AFF. | Underside of the bicycle handle bars are about 54" AFF and protrude about 12" into the circulation path. | Lowered bike hooks or accessible storage not affected by passage by bikes stored on higher racks; see #13 above.  No additional change required. |
| 16 | ADA/ FHA / NYC 2014 | The pull side of the door requires a forward approach.  Therefore, the maneuvering space must be 60" deep and must extend 18" to the side of the latch of the door. | On the elevator lobby side of the door to the accessible parking, the maneuvering space extends only 14-1/2" beside the latch side of the door. | See attached parking plan. Accessible car space moved to be adjacent to accessible entrance to elevator lobby.

Directional signage to accessible entry to be provided from other building entry door. |

2025-10-09

| | | | | |
|---|---|---|---|---|
| **17** | ADA/ FHA / NYC 2014 | The top of the threshold cannot be more than 1/2" above the landing on both sides of the door. If it is taller than 1/4", it must be beveled 1:2. | At the door between the Garage and the accessible parking spaces, the top of the threshold is 2" above the Garage floor.  It is 1-1/2" tall before the bevel starts. | See attached parking plan.  Directional signage to accessible entry to be provided from other building entry door. |
| | **1st Floor:** | | | |
| **19** | FHA / NYC 2014 | The lower outlet of the electrical receptacle must be at least 15" AFF. | The electrical receptacles in the Lobby are 14" AFF. | Install lock box over outlets not intended for resident use. |
| | **3rd Floor:** | | | |
| **21** | NYC 2014 | Interior and exterior signs identifyiing permanent rooms and spaces must have raised characters and have messages repeated in braille. | The signs identifying rooms in the amenities area do not have raised letters or braille. | Adjust signage to include braille.  *See* #6 above. |
| **22** | NYC 2014 | On the push side of a swinging door, the bottom 10" must be smooth - surfaces must be within 1/16" of the same plane. Cavaties created by kick plates must be capped. | The corridor door between the elevators and the amenity area is a full glass door.  The bottom stile is only 4-1/2" tall and the plane of the glass is more than 1/16" from the plane of the stile. | Add kickplate to 10" height from ground / floor on push side of door. |
| **23** | NYC 2014 | On the push side of a swinging door, the bottom 10" must be smooth - surfaces must be within 1/16" of the same plane. Cavaties created by kick plates must be capped. | At the corridor doors between the elevators and the amenity area, the turn on the security lock interrupts the smooth surface. | Remove the cylinder lock. |

2025-10-09

| | | Lounge: | | |
|---|---|---|---|---|
| 25 | FHA / NYC 2014 | The pull side of the door requires a forward approach.  Therefore, the maneuvering space must be 60" deep and must extend 18" to the side of the latch of the door. | The maneuvering space at the door is only 49" deep. | Reverse swing of door to swing into room or create double acting swing at door.<br><br>(Confirm fire code compliance of door swinging into room, in which case push side clearance is acceptable as is -door does not have closer.) |
| 26 | FHA/ NYC 2014 | Knee and toe clearance must be provided at the common use sink.  Removable cabinets are not permitted. | The knee and toe space under the sink is blocked by a cabinet. | Add undercounter refrigerator to confirm "wet bar" at this location, and no need for forward, pull under approach. |
| | | 3rd Floor Terrace: | | |
| 28 | FHA/ NYC 2014 | The top of the threshold cannot be more than 1/2" above the landing on both sides of the door. If it is taller than 1/4", it must be beveled 1:2. | The top of the threshold is 1" above the Lounge floor and 1-3/4" above the deck. | Replace or modify threshold to no more than 1/2" total rise and rise over 1/4" beveled at slope of 1:2. |
| 29 | FHA / NYC 2014 | Wheelchair spaces are provided at tables.  The clear floor space under the table must be at least 30" wide.  The knee space under the table must be at least 27" tall, and 17" deep. | At the community table, the knee space is only 9-1/2" deep. | Additional table seating to be  provided in this area with an accessible seating space. |

2025-10-09

| 30 | FHA / NYC 2014 | Object may not protrude into the circulation path by more than 4" when bottom edge is 27"-80" AFF. | The corner of the community table is along a circulation path. The underside of the counter is 27-3/4" above the pavers and projects 10" into the circulation path. | Add post to end of Community table seating for cane detection. |
|---|---|---|---|---|
| 32 | FHA / NYC 2014 | The lower outlet of the electrical receptacle must be at least 15" AFF. | The centerlines of the lower outlets are only 13-1/4" AFF. | Install lock box over outlets not intended for resident use. |

**Fitness Room:**

| 34 | FHA/ NYC 2014 | The top of the threshold cannot be more than 1/2" above the landing on both sides of the door. If it is taller than 1/4", it must be beveled 1:2. | The threshold is 3/4" and is not beveled. | Replace or modify threshold to no more than 1/2" total rise and rise over 1/4" beveled at slope of 1:2. |
|---|---|---|---|---|
| 35 | FHA/ NYC 2014 | On the push side of a swinging door, the bottom 10" must be smooth - surfaces must be within 1/16" of the same plane. Cavaties created by kick plates must be capped. | The corridor door between the elevators and the amenity area is a full glass door. The bottom stile is only 4-1/2" tall and the plane of the glass is more than 1/16" from the plane of the stile. | Add kickplate to 10" height from ground / floor on push side of door.\n\nRemove cylinder lock. |
| 36 | FHA/ NYC 2014 | The accessible route must be at least 36" wide. Accessible route may narrow to 32" for no more than 24". | Parts of the accessible route to each type of fitness equipment narrow to less than 36" wide for a distance of more than 24". | Relocate fitness equipment to provide minimum 36" wide accessible route. |

**Kids' Play Area:**

| 38 | FHA/ NYC 2014 | The lower outlet of the electrical receptacle must be at least 15" AFF. | The centerlines of the lower outlets are only 13-1/4" AFF. | Install lock box over outlets not intended for resident use. |
|---|---|---|---|---|
| 39 | | Knee and toe clearance must be provided at the common use sink. Removable cabinets are not permitted. | No forward approach available for common use sink because of base cabinet. | Remove base cabinet to provide forward, pull under approach (with pipe protection as needed). |

2025-10-09

| | | **Laundry Room:** | | |
|---|---|---|---|---|
| 42 | FHA / NYC 2014 | The sink knee space must be at least 30" wide, at least 27" for a distance of at least 8" past the front ledge.  Toe space must be at least 9" high and extend 17" - 25" under the sink.  The faucet control must be no farther from the front edge of the counter than the end of the toe space. | The faucet control is about 21-1/2" from the front edge of the counter.  The toe space extends only about 15" past the front edge of the counter. | Toe space depth to be increased to at least 17" by removal or relocation of the bottom cross bar under the sink. |
| | | **Pet Spa:** | | |
| 45 | FHA/ NYC 2014 | A forward approach to the push side of the door is required. Therefore, the maneuvering space must be 48" deep and the width of the door.  If the door has a latch and a closer, the maneuvering space must extend 12" beyond the latch side of the door. | A washer/dryer partially blocks the maneuvering space at the Pet Spa entrance door reducing the depth to 35". | Relocate laundry equipment obstrucing entry door. |
| 46 | FHA/ NYC 2014 | The lower outlet of the electrical receptacle must be at least 15" AFF. | The centerlines of the lower outlets are only 12" AFF. | Install lock box over outlets not intended for resident use. |

| | | | | |
|---|---|---|---|---|
| 47 | FHA/ NYC 2014 | When a side reach over an obstruction is required, the obstruction may not be taller than 34" or deeper than 24". If the obstruction is less than 10" deep, then the operable parts must be within 54" of the floor. If the obstruction is no more than 34" tall and no more than 24" deep, then the operable part must be within 46" AFF. | The hot and cold water levers are 31" behind the front of the pet bathtub and 50" AFF. | Relocate or modify faucet controls to be within accessible reach. |
| 49 | FHA/ NYC 2014 | The top of the threshold cannot be more than 1/2" above the landing on both sides of the door. If it is taller than 1/4", it must be beveled 1:2. | At the door to the dog run, the top of the threshold is 9-1/2" AFF. | This door is in the hallway and does not provide any resident access. Install "No Resident Access" signage on door. |
| | **Roof Terrace:** | | | |
| 53 | FHA/ NYC 2014 | The top of the threshold cannot be more than 1/2" above the landing on both sides of the door. If it is taller than 1/4", it must be beveled 1:2. | At the door to the roof terrace, the top of the threshold is 1" AFF and 1-1/2" above the pavers. It is not beveled. | Replace or modify threshold to no more than 1/2" total rise, with rise over 1/4" beveled at a slope of 1:2. |
| 54 | NYC 2014 | Doors and sidelights adjacent to doors that contain glazed panels for vision must have the bottom of at least one panel within 43" AFF or all must be higher than 66" AFF. | The bottom of the lowest panel is 50" AFF. | Frost or otherwise obscure vision light on door. |

2025-10-09

| | | | | |
|---|---|---|---|---|
| 56 | FHA / NYC 2014 | When a side reach over an obstruction is required, the obstruction may not be taller than 34" or deeper than 24". If the obstruction is less than 10" deep, then the operable parts must be within 54" of the floor. If the obstruction is no more than 34" tall and no more than 24" deep, then the operable part must be within 46" AFF. | The outdoor grill is set in a counter that is 38" high. The grill has a lid. When open, the lid handle is 64" from the front edge and 17" AFF. | Install aftermarket adaptation to allow grill lid to be within accessible reach range. |
| 58 | FHA/ NYC 2014 | The faucet on a common use sink is an operable part and must be within reach. A side reach over a cabinet that is no more than 34" tall may be used if the faucet is within 24" of the front edge. The operable parts must be within 46" AFF. | The counter is 38-1/4" tall. Therefore the faucet is out of reach. | Lower sink to 34" AFF or remove sink. |
| 59 | FHA/ NYC 2014 | Changes in level of more than 1/2" must be ramped at no more than 8.33% or otherwise made accessible. | Along the accessible route between the pavers and the artificial turf, there are changes in level of 1" and it is not ramped. | Level change of surface to no more than 1/4" difference, or 1/2" difference if beveled at 1:2. |
| 60 | FHA/ NYC 2014 | A tall object on a post is in the circulation path. If the underside is more than 27" AFF, it cannot protrude more than 12" into the circulation path. | The undersides of the foosball handles are 31-1/4" above the floor and protrude 15" into the circulation path. | Install floor mat with contrasting colors to extend beyond table. |
| | **Trash Rooms:** | | | |
| 63 | FHA/ NYC 2014 | Common use interior doors must be openable with no more than 5 pounds force. | The trash room doors required about 7 pounds force to open. | Adjust closer on trash room doors. |

2025-10-09

| | | | | |
|---|---|---|---|---|
| 64 | FHA/ NYC 2014 | The top of the threshold cannot be more than 1/2" above the landing on both sides of the door. If it is taller than 1/4", it must be beveled 1:2. | The top of the threshold is 3/4" above the trash room floor.  The bevel begins 1/2" above the floor and the bevel is sloped 1:1. | Modify or replace threshold to no more than 1/2" total rise and any rise over 1/4" beveled at a slope of 1:2. |
| 65 | FHA/ NYC 2014 | Operable parts that are required to be accessible must have a level 30" x 48" clear floor space. The controls must be operable with one hand and cannot require tight grasping, pinching, or twisting of the wrist. | The trash chute is in a small room where the door cannot swing shut without hitting the wheelchair. The door has a closer without a hold-open device.  Two hands are needed; one to hold the door and one to open the chute.  Thereofre, the swinging door blocks the clear floor space for the trash chute controls. | Install delayed action closer device on door so that closer is timed or not automatically operated. |
| 66 | FHA/ NYC 2014 | Operable parts must be operable with one hand and without tight grasping, tight pinching, or twisting of the wrist.  It must be operable with no more than 5 pounds force. | In the trash rooms, the chute door requires 13 pounds to open. | Replace pistons on trash chute doors. |
| **DWELLING UNITS** | | | | |
| **In All Units:** | | | | |
| 69 | FHA/ NYC 2014 | All bathrooms shall be provided for the future installation of grab bars and shower seats at toilets, bathtubs, and showers. Reinforcement should extend 2" beyond mounting locations. | No evidence observed that reinforcement was installed in bathroom wals to allow later installation of grab bars around the toilet, tub, shower, and shower seat. | Five sets of bathroom grab bars and toggler anchoring devices will be kept in stock on site for installation on request at no expense to resident within ten days of request.<br><br>Stock on site will be replenished as necessary. |
| 70 | NYC 2014 | Doors to accessible rooms must have a minimum clear opening of 32" when open 90 degrees. | The clear opening of the bedroom and bathroom doors are 31-1/2". | On request, install offset hinges to provider full 32" clear opening for NYC Code compliance.  (Applicable for doors at least 2'10" wide.) |

2025-10-09

| | | | | |
|---|---|---|---|---|
| 71 | NYC 2014 | The door has securing hardware. It must be mounted within 48" AFF. | The securing hardware on the entry door is mounted about 60" AFF. | On request, provide lowered securing hardware at entry door. |
| 72 | NYC 2014 | Lighting controls, electrical switches and receptable outlets, environmental controls, electrical panelboards, and user controls for security or intercom systems must be within reach. A parallel approach is possible; therefore, the operable parts must be between 15"-48" AFF. | The intercom is mounted about 56" AFF. | On request, lower intercom to no more than 48" AFF to highest operable part. |
| 73 | FHA/ NYC 2014 | Lighting controls, electrical switches and receptable outlets, environmental controls, electrical panelboards, and user controls for security or intercom systems must be within reach. A parallel approach is possible; therefore, the operable parts must be between 15"-48". | The thermostat is mounted about 59" AFF. | On request, provide remote for operation of the HVAC system. |

2025-10-09

**Kitchens in All Units:**

| | | | | |
|---|---|---|---|---|
| 76 | NYC 2014 | Electrical outlets over each length of countertop must be within reach.  That means the countertop cannot be taller than 34". | | For NYC, on request, modify kitchen as necessary to provide 34" AFF max height at kitchen sink and work surface with forward approach.<br><br>Modification of sink and work surface to be accomplished by cutting from bottom / underside of counters.<br><br>Modification to be completed within 10 days of request as per NYC ordinance. |
| 78 | NYC 2014 | The top of the kitchen sink must be within 34" of the floor.  A forward clear floor space must be provided, including having knee and toe space underneath. | The top of the kitchen sink is 36" above the floor and the knee and toe space is blocked by a cabinet and a deep kitchen sink. | *See*  #76. |
| 79 | NYC 2014 | A 30" wide accessible work surface must be provided in the kitchen counter that is no higher than 34".  It must have knee and toe space underneath.  A removable cabinet may be installed. | Work surface not provided. | See #76. |

2025-10-09

| | | | | |
|---|---|---|---|---|
| 80 | FHA / NYC 2014 | A forward approach to the sink is required.d  Water supply and pipes under lavatories and kitchen sinks must be insulated or otherwise configured to protect against contact with no sharp or abrasive surfaces. | The pipes under the kitchen sinks are not insulated, and the garbage disposal is not insulated. | Insulation or other pipe protection under sink will be provided when base cabinet is removed. |
| 82 | FHA/ NYC 2014 | The lavatory requires a centered forward approach with clear floor space that is at least 30" wide. The knee space must be at least 27" tall for a distance of at least 8" past the front edge.  Toe space must be at least 9" high and extend at least 17" past the front edge.  A removable cabinet may be installed. | The vanity is not removable.  The lavatory is not mounted to the wall.  It is supported by the vanity. | On turn, change lavatory to one that allows for compliant forward approach (as specification provided to FHJC). |
| 83 | FHA/ NYC 2014 | A forward approach is required. Therefore, the pipes under the lavatory must be insulated to protect a person from burns and from sharp or abrasive edges. | The pipes under the accessible lavatory are not insulated. | Insulation or other pipe protection under sink will be provided when base cabinet is removed. |
| **Repeated Unit Issues Consolidated:** | | | | |
| 85 | NYC 2014 | Doors to accessible rooms must have a minimum clear opening of 32" when open 90 degrees. | The clear opening of the bedroom and bathroom doors are 27-1/2". | On turn, widen doors when nominal 32" (2'10" door) is not provided.<br><br>Units: 515 (401, 501, 505, 511, 603, 608, 708) ; 301 |

2025-10-09

| | | | | |
|---|---|---|---|---|
| 86 | FHA/ NYC 2014 | Accessible route into and through dwelling units must be at least 36" wide. It may reduce to 32" wide for a length of no more than 24". | The accessible route into the bedroom is reduced to 29-1/2" by a door. | See #85 above. |
| 87 | FHA/ NYC 2014 | [Laundry Closet] If the laundry closet is deeper than 24", the closet door is intended for user passage. It must provide at least 31-5/8" clear opening. | The closet is designed to support laundry appliances. Therefore, the closet can be used for storage or laundry. The closet is about 36-1/2" deep and the clear opening of the door is only 31-1/4". | Notice provided to current and prospective residents of the availability of installation in closet of removable shelves within accessible reach ranges on request at no cost to resident.<br><br>Units 701, 704; 705, 706; 702; 610; 601; 513, 309, 403, 503; 509, 512, 606, 609; 504; 502; 404, 402 |
| 88 | FHA/ NYC 2014 | [Coat Closet] If the coat closet is deeper than 24", the closet door is intended for user passage. It must provide at least 31-5/8" clear opening. | The coat closet is about 39-1/4" deep and the clear opening of the door is only 24-1/4". | Notice provided to current and prospective residents of the availability of installation in closet of removable shelves within accessible reach ranges on request at no cost to resident.<br><br>Units 602; 304, 307, 405, 406, 408, 410, 411, 414, 507, 604 |

| | | | | |
|---|---|---|---|---|
| 89 | FHA/<br>NYC<br>2014 | [Kitchen Sink] The kitchen sink must have a forward clear floor space.  It must be at least 30" x 48" and centered.  A removable cabinet is permissible if the floor, wall behind and the surrounding cabinetry are finished. | The cabinet is only 30" wide.  Therefore, the side would need to be removed to provide a 30" wide clear width.  Doing so exposes the unfinished side of the dishwasher. | On request, provide 30" wide knee and toe space at kitchen sink.  (Part of NYC building code modification to be allowed on request within 10 days of request.)  Finish panel with at most de minimus narrowing of sink knee space width will be added to dishwasher side of knee space at sink when created.<br><br>Units:  701, 704; 705, 706; 702; 707; 612; 611; 610; 510, 607; 602; 601; 515, 401, 501, 505, 511, 603, 608, 708; 514; 513, 309, 403, 503; 509, 512, 606, 609; 506, 407, 409, 412, 508, 605, 703; 504; 416; 415, 308; 413, 306; 304, 307, 405, 406, 408, 410, 411, 414, 507, 604; 404, 402; 307; 303; 302; 301 |
| 92 | NYC<br>2014 | [Bathroom] Mirror Height at 40" AFF maximum to bottom of reflective surface. | Mirror height as much as 42 3/4" AFF. | On turn, mirror height to be lowered to 40" AFF maximum to bottom of reflective surface if greater than 41" AFF as built.<br><br>Units 509, 512, 606, 609; 504; 416; 306, 413; 307; 302; 301; 704, 701; 707; 610 (tub bath only); 607, 510 |

2025-10-09

| | | | | |
|---|---|---|---|---|
| **96** | NYC 2014 | [Bathroom - Bathtub Hand Sprayer]  The bathtub controls, including the diverter, must be mounted between the midpoint and the open end of the bathtub. A handheld showerhead must be provided which must be usable as a fixed head at various heights or as a handheld spray. | The diverter is mounted on the spout which is centered on the control wall. | On request, provide handheld shower sprayer and / or control/diverter extension for bathtub at no cost to resident.<br><br>Units 705, 706; 702 (bathtub); 707 (bathtub) ; 612; 611; 610 (bathtub); 510, 607; 602; 601 (bathtub); 515, 401, 501, 505, 511, 603, 608, 708; 514; 513, 309, 403, 503; 509, 512, 606, 609 (bathtub); 506, 407, 409, 412, 508, 605, 703; 504 (bathtub); 502; 416; 415, 308; 304, 307, 405, 406, 408, 410, 411, 414, 507, 604; 404, 402; 307;  303 (both baths); 302; 301 (bathtub) |
| **105** | | [Bathroom] Water closet centerline | Water closet centerline must be 16"-18" from sidewall when required to be next to a grab bar wall. | On request, install exterior wall panel to provide 18" maximum from toilet centerline to side wall.<br><br>Units 705, 706 (19-1/2" - tub bath); 611 (20"); 610 (19" shower bath); 601 (21" shower bath); 514 (20-1/2"); 513, 309, 403, 503 (tub bath 19-1/2") (shower bath - 19-1/4"); 504 (19-3/4"  - tub bath; 19-1/4" shower bath); 502 (19-1/2"); 416 (2-1/4"); 415, 308 (19-1/2"); 413, 38 (19-3/4"); 307 (21-1/2"); 303 (right tub bath - 19-1/2"); 301 (tub bath - 19-1/2") |

2025-10-09

| 106 | FHA / NYC 2014 | [Secondary entry door - Interior side threshold] In the dwelling unit, the balcony, patio or terrace sliding door threshold cannot be taller than 3/4" on the inside. When taller than 1/4" it must be beveled 1:2. | The interior side is 1-1/2" tall and is not beveled. | Provide notice to current and prospective residents of availability of compliant ramp on interior side of balcony at no cost.<br><br>Ramp will have running slope no more than 8.33%, be flush to the top of the interior threshold,and will have no more than 1/4" abrupt vertical change of level.<br><br>Sufficient number to be kept in stock.<br><br>Unit 705, 706; 702 (three balconies); 612; 611; 610 (2-1/2" - 2 balconies); 510, 607 (2-1/2); 602 (2"); 601 (2-1/4"); 515, 401, 501, 505, 511, 603, 608, 708 (2"); 514 (2"); 513, 309, 403, 503 (2-1/4"; 1-1/2" - two balconies); 509, 512, 606, 609 (2-1/4"); 506, 407, 409, 412, 508, 605, 703 (2-1/4"); 504 (2-1/2"); 502 (1-1/4"); 415, 308 (2-1/4"); 413, 306 (2-1/4"); 413, 306; 304, 307, 405, 406, 408, 410, 411, 414, 507, 604 (2-1/4"); 404, 402 (1-1/2"); 307 (2-1/4"); 303 (2-1/4"); 302 (2-1/4"); 301 (2-1/4")<br><br>Terrace units:  307, 308, 309, 504, 601, 602, 702, 705, 706 |

2025-10-09

| | | | | |
|---|---|---|---|---|
| 107A | | Terrace Units - Exterior Side threshold change in level | Terrace surface is pervious pavers; change in level on exterior side exceeds 1/2". | Terraces (pavers) are inset and create impervious and level surface at door, with the exception of terrace door at Unit 307 (2-1/2" exterior).<br><br>On request for Unit 307, ramp with running slope no more than 8.33%,  flush to the top of the interior threshold, and with no more than 1/4" abrupt vertical change of level will be provided at exterior side of terrace door. |
| **One-off Unit Issues** | | | | |
| **Unit 502, One Bedroom One Bath:** | | | | |
| 111 | FHA / NYC 2014 | [Kitchen]  Clearance between opposing elements | The clearance between the refrigerator and the dishwasher is only 37-1/2" and between the range and the counter is 40". | On request, replace refrigerator with shallower model. |
| **Unit 404, One Bedroom, One Bath:** | | | | |
| 113 | FHA / NYC 2014 | [Kitchen]  Clearance between opposing elements | The clearance between the refrigerator and the dishwasher is only 36" and between the range and the counter is 40". | On request, replace refrigerator with shallower model with comparable storage capacity. |
| **Unit 302, One Bedroom, One Bath:** | | | | |
| 116 | **FHA / NYC 2014** | At least one of the electrical receptacles over an uninterrupted corner countertop must be within reach. | The centerline of the outlet is only 17" from the intersecting island counter. | On request in this kitchen, outlet in corner can be moved to no more than 44" AFF. |

**END**

2025-10-09



Spaces #13 and 14. Modified to standard (not accessible) parking.

Accessible space #19 - will be converted to standard parking space; no need for access aisle.

The spaces with Xs will have any accessible marking removed.

This is the door that will have the directional signage pointing to the accessible building entry door.

These two standard parking spaces will be converted to a single accessible car parking space (8' wide with 5' wide access aisle).

This is accessible door to enter the building.

This is location of new van accessible space (16' wide including access aisle).

**EXHIBIT B**

## NOTICE OF RETROFITS TO PUBLIC AND COMMON USE AREAS
## AT ASTOR ON THIRD

To Our Residents and Prospective Residents:

Astor on Third is dedicated to the principle of equal housing opportunity. The federal Fair Housing Act requires that the public and common use areas and apartments in newer apartment communities have certain features of physical accessibility for people with disabilities.

This is to advise you that within the next twelve months, we will be undertaking a program of retrofits to the public and common use areas to make them more accessible to persons with disabilities. A list of mandatory retrofits we will be undertaking is available at the leasing office. We do not anticipate any significant disruption to your use and enjoyment of the public and common use areas being modified.

Should you have questions regarding this letter, please contact the management office at **[INSERT CONTACT INFORMATION]**.

Sincerely,

Astor on Third

**EXHIBIT C**

**NOTICE OF RETROFITS TO CURRENT RESIDENTS OF ASTOR ON THIRD**

Astor on Third is dedicated to the principle of equal housing opportunity. The federal Fair Housing Act requires that apartments in newer apartment communities have certain features of physical accessibility for people with disabilities.

As part of our commitment, we offer certain physical modifications for apartment units at Astor on Third to provide greater accessibility for people with disabilities. The work would be done upon your request and at no cost to you. Modifications will be completed within 30 days of your request, except if a different timeline is stated below.

The specific modifications you may be eligible to receive will depend on your apartment unit type, but include:

- Installation of grab bars in bathroom near toilet and in or near shower/bathtub (to be completed within ten days of resident request);

- Installation of wall panel next to toilet to provide 18" maximum reach to grab bar;

- Installation of removable shelves within accessible reach ranges in closet with washer/dryer hookup and/or in coat closet;

- Installation of shallower refrigerator with comparable storage capacity, to increase clearance between refrigerator and dishwasher;

- Installation of handheld shower sprayer and/or diverter extension for bathtub;

- Lowering of securing hardware at entry door to maximum 48" above floor;

- Lowering of intercom to maximum 48" above floor;

- Provision of remote for operation of the HVAC system;

- Widening of interior door openings

- Installation of balcony and/or terrace interior threshold ramps;

- Replacement of bathroom sink and base cabinet so a person using a wheelchair can reach the sink with a forward approach;

- Modification of kitchen sink and work surface, including lowering kitchen counters to 34" maximum height and removing kitchen sink base cabinet, so a person using a wheelchair may reach the sink with a forward approach (to be completed within ten days of resident request).

Some of the modifications may require that you be dislocated from your unit for a period of more than fourteen hours.  In that event, we will, at our option, either provide you with alternative housing in an available furnished unit on site or pay you the applicable federal government per diem rate for food and lodging for the New York City area for each day or half-day you are dislocated.

- Please note that, in addition to providing any resident with the modifications listed above, Astor on Third will permit any other reasonable modifications of its physical premises if such modifications may be necessary to enable a person with a disability to use the premises.

Please contact the management office at **[INSERT CONTACT INFORMATION]** if you have any questions or are interested in requesting any accessibility modifications.

Sincerely,

Astor on Third

**EXHIBIT D**

**NOTICE OF RETROFITS FOR NEW RESIDENTS OF
ASTOR ON THIRD AVAILABLE ON REQUEST**

Astor on Third is dedicated to the principle of equal housing opportunity. Under the Fair Housing Act, we are pleased to offer certain features of physical accessibility for people with disabilities to our new residents on request.

Upon your request, we will provide certain modifications to your apartment at Astor on Third to provide greater accessibility for people with disabilities. The modifications will be made at no cost to you, and as soon as practicable, but within 30 days (or less) of your request.[1]

The specific modifications you may be eligible to receive will depend on your apartment unit type, but include such changes as:

- Installation of grab bars in bathroom near toilet and in or near shower/bathtub (to be completed within ten days of request);

- Installation of wall panel next to toilet to provide 18" maximum reach to grab bar;

- Installation of removable shelves within accessible reach ranges in closet with washer/dryer hookup and/or in coat closet;

- Installation of shallower refrigerator with comparable storage capacity, to increase clearance between refrigerator and dishwasher;

- Installation of handheld shower sprayer and/or diverter extension for bathtub;

- Lowering of securing hardware at entry door to maximum 48" above floor;

- Lowering of intercom to maximum 48" above floor;

- Provision of remote for operation of the HVAC system;

- Widening of interior door openings;

- Installation of balcony and/or terrace interior threshold ramps;

- Replacement of bathroom sink and base cabinet so a person using a wheelchair can reach the sink with a forward approach;

---

[1] If your apartment home is occupied at the time you sign a lease and make a request for accessibility modification, the modification period will run from the date the apartment is vacated by the prior resident.

- Modification of kitchen sink and work surface, including lowering kitchen counters to 34" maximum height and removing kitchen sink base cabinet, so a person using a wheelchair may reach the sink with a forward approach (to be completed within ten days of request).

Please note that, in addition to providing any resident with the modifications listed above, Astor on Third will permit any other reasonable modifications of its physical premises if such modifications may be necessary to enable a person with a disability to use the premises.

Some of the available modifications may require that you be temporarily dislocated from your apartment for fourteen hours or more.  If you are already occupying your apartment when the modification work takes place, we will, at our option, either provide you with alternative housing in an available furnished unit on site or pay you the applicable federal government per diem rate for food and lodging for the New York City area for each day or half-day you are dislocated.  Alternatively, if the modification would require your temporary dislocation, you may opt to delay your move-in date until the modification work you have requested is completed (no more than 30 days from the start of the modification period).

Please contact the management office at **[INSERT CONTACT INFORMATION]** if you have any questions or are interested in requesting any accessibility modifications.

Sincerely,

Astor on Third

**EXHIBIT E**

**NON-PROFIT ORGANIZATIONS TO BE NOTIFIED
OF AVAILABLE HOUSING**

1. Brooklyn Center for the Disabled (BCID)
   5 Elm Place, 5th fl.
   Brooklyn, NY 11201

2. Self-Advocacy Association NYC-Westchester
   25 Beaver St. C/o OPWDD-SANYS, 4th fl.
   New York, NY 10004

3. AHRC NYC
   83 Maiden Lane
   New York, NY 10038

4. Heights and Hills
   81 Willoughby St., Ste 302,
   Brooklyn, NY 11201

5. Center for Independence of the Disabled in New York, Queens (CIDNY)
   80-02 Kew Gardens Road, #107
   Kew Gardens, NY 11415

6. Queens Center for Progress
   81-15 164th St
   Jamaica, NY 11432

7. Bronx Independent Living Services (BILS)
   4419 Third Ave, Ste 2-c
   Bronx, NY 10457

8. Independent Living Association
   110 York St
   Brooklyn, NY 11201

9. Harlem Independent Living Center
   289 Nicholas Ave, Ste 21
   New York, NY 10027

10. Long Island Center for Independent Living
    3601 Hempstead Turnpike, Ste. 208 & 500
    Levittown, NY 11756

11. Include NYC
    520 8th Ave., 25th fl. Ste 2503
    New York, NY 10018

12. New York State Independent Living Council, Inc.
    111 Washington Ave., Ste. 101
    Albany, NY 12210

13. Disability Rights New York
    25 Chapel Street, Suit 1005
    Brooklyn, NY 11201

14. Inter-Agency Council of Developmental Disabilities Agencies, Inc.
    150 West 30th St., 15 fl.
    New York, NY 10001

15. United Spinal Association of NYC
    120-34 Queens Blvd., #330
    Kew Gardens, NY 11415

16. Staten Island Center for Independent Living
    470 Castleton Avenue
    Staten island, NY 10301

**EXHIBIT F**

**<u>NOTICE TO NON-PROFIT ORGANIZATIONS</u>**

**[INSERT LETTERHEAD]**

Astor on Third has recently completed a number of modifications to the common areas and individual units of our multi-dwelling residential building in Astoria, Queens, New York. Astor on Third is located at 26-41 3rd Street, Astoria, New York 11102, and contains 137 apartments, which are a mix of studio, one-bedroom, and two-bedroom units.  More information about Astor on Third an be found at: www.astoronthird.com.

In addition, prospective residents may contact the Astor on Third management office to find out about other "on request" modifications that may be available to increase the physical accessibility of a particular apartment.  The management office can be reached at **[INSERT CONTACT INFORMATION]**.

We hope this information is helpful to your organization.

Sincerely yours,

**EXHIBIT G**

<u>Fair Housing Logo – NOT TO SCALE</u>



EQUAL HOUSING
OPPORTUNITY

**EXHIBIT H**

Fair Housing Poster – NOT ACTUAL SIZE

U. S. Department of Housing and Urban Development





**EQUAL HOUSING OPPORTUNITY**

**We Do Business in Accordance With the Federal Fair Housing Law**

(The Fair Housing Amendments Act of 1988)

**It is illegal to Discriminate Against Any Person Because of Race, Color, Religion, Sex, Handicap, Familial Status, or National Origin**

■ In the sale or rental of housing or residential lots

■ In advertising the sale or rental of housing

■ In the financing of housing

■ In the provision of real estate brokerage services

■ In the appraisal of housing

■ Blockbusting is also illegal

Anyone who feels he or she has been discriminated against may file a complaint of housing discrimination:

    1-800-669-9777 (Toll Free)
    1-800-927-9275 (TTY)
    www.hud.gov/fairhousing

**U.S. Department of Housing and Urban Development**
**Assistant Secretary for Fair Housing and Equal Opportunity**
**Washington, D.C. 20410**

Previous editions are obsolete      form HUD-928.1 (6/2011)

**EXHIBIT I**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FAIR HOUSING JUSTICE CENTER, INC., | |
| *Plaintiff,* | No. 23 Civ. 1396 (LDH) |
| v. | **STIPULATION AND ORDER OF DISMISSAL** |
| NY BUILDING ASSOCIATES INC., NARESH MAHANGU, DEVELOPING NY STATE, LLC, THIRD STREET EQUITY, LLC, and DURUKAN DESIGN INC., | |
| *Defendants.* | |

**WHEREAS**, Plaintiff and Defendants, by and through their undersigned counsel, stipulate and agree as follows:

1. This action is hereby dismissed with prejudice, pursuant to the terms of the Settlement Agreement in this action.

2. The Court shall retain jurisdiction over this action for the sole purpose of enforcing compliance with the Settlement Agreement.

3. This stipulation may be executed in one or more counterparts, by facsimile or electronic signature, all of which shall be deemed original for the purposes of this stipulation.

Date:   February __, 2026
New York, New York

**[SIGNATURE PAGE TO FOLLOW]**

1

*For Plaintiff:*

EMERY CELLI BRINCKERHOFF ABADY
WARD & MAAZEL LLP

By: _____
Diane L. Houk
Nick Bourland
1 Rockefeller Plaza, 8th Floor
New York, NY 10020

*For Defendants:*

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ

By: _____
Theresa L. Kitay
Dean Sterling Kidd
3414 Peachtree Road, NE
Monarch Plaza, Suite 1500
Atlanta, Georgia 30326

*Attorneys for Defendants Developing NY
State, LLC and Third Street Equity, LLC*

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

By: _____
Martin A. Schwartzberg
175 Pinelawn Road
Suite 250
Melville, New York 11747

*Attorneys for Defendants NY Building
Associates Inc. and Naresh Mahangu*

SALTZ NALIBOTSKY

By: _____
Albert M. Saltz
101 Lindenwood Dr., Suite 225
Malvern, Pennsylvania 19355

*Attorneys for Defendant Durukan
Design Inc.*

It is so ORDERED this _____ day of _____, 2026.


_____
Hon. LaShann DeArcy Hall
UNITED STATES DISTRICT COURT JUDGE

2